IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
October 27, 2020 Session

## STATE OF TENNESSEE v. TERESA ANN NORWOOD

**Appeal from the Criminal Court for Knox County**
**No. 114893     Steven W. Sword, Judge**

_____

### No. E2020-00042-CCA-R3-CD

_____

The State appeals the Knox County Criminal Court's order dismissing the 2019 presentment charging the defendant, Teresa Ann Norwood, with a single count of passing a worthless check, arguing that the trial court impermissibly ruled on the sufficiency of the evidence. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Cody N. Brandon, Assistant Attorney General; Charme P. Allen, District Attorney General; and Randall Kilby and William Bright, Assistant District Attorneys General, for the appellant, State of Tennessee.

Eric Lutton, District Public Defender; and John Halstead, Assistant District Public Defender, for the appellee, Teresa Ann Norwood.

### OPINION

In February 2019, the Knox County Grand Jury charged the defendant via presentment with a single count of passing a worthless check in the amount of $2,325.00 to the victim in December 2017. The defendant moved to dismiss the presentment on "grounds that pursuant to undisputed facts in the case," the defendant was "legally not guilty of the charge of writing a bad check." The defendant asserted that "the parties agree that the facts of the case will show" that the victim worked for the defendant for two weeks "and that after she performed those services she was written the check, which then did not clear the bank." Citing Code section 39-14-121 and *State v. Newsom*, 684 S.W.2d 647 (Tenn. Crim. App. 1984), the defendant asserted that a check tendered as payment for a pre-existing debt did not fall within the purview of the bad check law.

At the hearing on the motion to dismiss, defense counsel indicated that the parties had

> stipulated to certain facts. This is a worthless check case. But what we have discovered is that the alleged victim worked for two weeks for [the defendant], had worked for a long time, but then the last period that [the victim] worked, [s]he worked for two weeks. At the conclusion of that two-week period, [the victim] was paid with a check that ended up not clearing the bank.

Counsel argued that, because the check was tendered to the victim for the purpose of satisfying a debt for services already rendered instead of for the purpose of obtaining money, services, labor, or credit, the defendant could not be guilty of a violation of Code section 39-14-121. The State agreed "that this is the fact pattern. . . . [T]his check represents two weeks of work that was done prior to the issuance of the check." The State argued, however, that, because "an ongoing employee provides their services in consideration of that check," "they're induced to do that work with the promise of getting payment. So we think if they're given a check that turns out to be invalid, then it would come under the statute." Following the argument of the parties, the trial court recessed to consider the motion.

Upon returning to open court, the trial court reiterated the stipulated facts, specifically inviting the parties to "correct me if I'm wrong on this." "[T]he parties seem to agree . . . that [the defendant] employed somebody to do some work for her. At the conclusion of the work, wrote a check. That check bounced for insufficient funds, and she didn't make it right. She hasn't paid it." Neither party objected to the trial court's summary of the stipulation. The trial court specifically asked whether "[t]he services had already been rendered" and whether this was "just . . . an outstanding debt." The State replied, "Yeah. It was the work she was being paid for" and agreed that all of the work had been completed before the defendant tendered the check at issue. The State argued that it could prove that the defendant's conduct satisfied the elements of the statute because "she obtained services, valuable services, and didn't pay for them, or attempted to pay for them with a bad check." The prosecutor candidly acknowledged, however, "this check's for debt."

The trial court, observing that it was "always hesitant" to make "a factual finding," again discussed the stipulated facts:

> So I think . . . what we do agree on is that the services were performed.  That created a debt to the alleged victim in this case.  And then the check was paid subsequent to the completion of those services.  There were no services, right, after everything had been done?

After the State agreed to this stipulation of facts a second time, the court ruled, "[i]n that case," the defendant's conduct "does not violate the statute."  The court granted the defendant's motion to dismiss the presentment but warned the defendant, "[Y]ou still owe that debt.  I suggest you pay that before the attorney general in Nashville gets involved in your case or they sue you civilly, okay?"

In this timely appeal, the State contends that the trial court erred by granting the defendant's motion to dismiss, arguing both that the trial court engaged in impermissible pretrial fact finding and that the trial court's decision rested upon an erroneous interpretation of Code section 39-14-121.  The defendant asserts that the trial court did not err because, based upon the facts as stipulated by the State, the defendant's conduct could not be prosecuted under Code section 39-14-121.

When assessing the propriety of the dismissal of an indictment via Rule 12, a reviewing court engages in a two-step process:

> First, we must determine whether the trial court based its decision upon findings of law, which would be appropriate, or findings of fact that should have been presented to a jury.  Second, as to questions of law, we review the trial court's holding de novo with no presumption of correctness.

*State v. Sherman*, 266 S.W.3d 395, 403 (Tenn. 2008) (citations omitted).

Tennessee Rule of Criminal Procedure 12 provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue."  Tenn. R. Crim. P. 12(b)(1).  "Generally speaking, pre-trial motions to dismiss that are 'capable of determination' involve questions of law, rather than fact."  *Sherman*, 266 S.W.3d at 403 (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)).  That being said, Rule 12 permits the trial court to "make findings of fact necessary to decide the questions of law presented by a pretrial motion so long as the factual findings are not intertwined with the general issue of guilt or innocence."  *State v. Goodman*, 90 S.W.3d 557, 561 (Tenn. 2002) (citations omitted).  "Where the factual findings necessary to resolve the motion are intertwined with the general issue, a ruling must be deferred until trial since, in criminal cases, there simply is no pretrial procedure akin to summary

-3-

judgment for adjudicating questions of fact involving the general issue of guilt or innocence." *Id.* (citations omitted). To this end, the trial court "may consider evidence beyond the face of the indictment" so long as the facts to be considered are "relevant only to the legal question presented by the defendant's motion, not to the general issue of guilt or innocence" and do not "qualify as 'factual evidence of the defendant's conduct at the time of the alleged offense.'" *Sherman*, 266 S.W.3d at 402 (quoting *Goodman*, 90 S.W.3d at 561). "If, on the record, the State and the defense unequivocally agree to" a stipulation of "facts, whether written or verbal, then the trial court may rely upon those stipulations as 'formal enough' to serve as the basis for deciding a motion to dismiss." *Sherman*, 266 S.W.3d at 403. In any event, the trial court's factual findings must "not encroach upon the province of the jury." *Sherman*, 266 S.W.3d at 403 (citation omitted).

In this case, the defendant asked the trial court to dismiss the indictment on grounds that her conduct, as alleged by the State, could not support a prosecution under Code section 39-14-121. The parties stipulated that the defendant issued a check to the alleged victim for the payment of services already rendered. When specifically asked by the trial court whether anything else followed the issuance of the worthless check, the State replied that it had not. In our view, because the stipulation of facts was all encompassing and because the determination whether, as a matter of law, a prosecution could be had under 39-14-121, was "a question of law which do[es] not involve factual findings about the general issue of guilt or innocence," *Goodman*, 90 S.W.3d at 561, the issue was capable of determination in a pretrial motion to dismiss. In consequence, the trial court did not err by ruling on the defendant's motion.

We turn, then, to our de novo review of the trial court's conclusion that the defendant's conduct could not be prosecuted under 39-14-121. *See Sherman*, 266 S.W.3d at 403; *see also State v. Henderson*, 531 S.W.3d 687, 692 (Tenn. 2017) ("Issues of statutory construction present questions of law which we review de novo, with no presumption of correctness.").

As charged in this case, Code section 39-14-121 provides that

> [a] person commits an offense who . . . knowingly [i]ssues or passes a check . . . for the purpose of obtaining money, services, labor, credit or any article of value, knowing at the time there are not sufficient funds in or on deposit with the bank or other drawee for the payment in full of the check or order.

T.C.A. § 39-14-121(a)(1). "As with prior law, a defendant is liable for criminal sanctions for passing a check knowing there are insufficient funds on account to make payment or

for stopping payment on a check when the value obtained was at the time the check was issued." *Id.*, Sentencing Comm'n Comments. Code section 39-14-121 "addresses a narrow factual situation, *i.e.* where the maker of a check or similar sight order obtains something of value by the fraudulent use of the instrument." *State v. Stooksberry*, 872 S.W.2d 906, 907 (Tenn. 1994). In *Newsom*, this court, when interpreting a version of Code section 39-14-121 that is substantially the same as the current version, concluded:

> The general rule is, where the statute specifies the obtaining of something of value as an element of the offense, the giving of a worthless check in payment of a preexisting debt is not a violation of the statute. Since the debt remains unpaid the maker of the check did not obtain anything of value from the payee and did not give the check with intent to defraud.

*Newsom*, 684 S.W.2d at 649. The court added that, "if the worthless check is given in payment of a preexisting debt, nothing else appearing, there is no fraudulent intent." *Id.* The critical time frame for determining whether the check was issued for something of value is the time the instrument is passed. *See Thompson v. Adcox*, 63 S.W.3d 783, 790 (Tenn. Ct. App. 2001).

> Although there is little case law on point, the Attorney General's office
>
> has opined that, if a defendant were to issue a worthless check to someone who had already performed labor or conferred the value and was waiting only for payment, the check would not have been issued for value, but rather to satisfy a pre-existing obligation. *See* [Tenn. Op.] Att'y Gen. 00-061 (April 3, 2000). Because the debt is not lessened, the issuer intends to obtain no "article of value" thereby, and the requirements of the statute are not satisfied.

Tenn. Op. Att'y Gen. 09-189 (Dec. 23, 2009); *see also* Tenn. Op. Att'y Gen. 00-061 (Apr. 3, 2000) (concluding that a "worthless check given for labor, materials, and services after the job was completed would not subject the drawer to criminal liability under [Code section] 39-14-121 because the check would not have been offered as an inducement to obtain anything of value by fraud"); Tenn. Op. Att'y Gen. 91-69 (July 24, 1991) (observing that "a prosecution will not lie under the statute for services already performed").

In addition, courts of other states with statutes similar to Code section 39-14-121 have generally concluded that the issuance of a worthless check for the payment of an antecedent debt does not violate the statute. *See, e.g.*, *Martin v. Commonwealth*, 821

S.W.2d 95, 97 (Ky. Ct. App. 1991). Indeed, "[m]ost States' statutes require (like Massachusetts) that property or something of value be obtained in exchange for a fraudulent check, and cases decided under substantially all such statutes have concluded that the statute does not apply to a check tendered in payment of an antecedent debt." *Commonwealth. v. Goren*, 893 N.E.2d 786, 789-90 (Mass. App. Ct. 2008) (appendix) (citing *United States v. Pearce*, 7 Alaska 246, 248, 250 (1924); *Ridenhour v. State*, 650 S.W.2d 575, 576-77 (Ark. 1983); *Laytner v. State*, 239 So.2d 857, 858 (Fla. Dist. Ct. App. 1970); *People v. Cundiff*, 305 N.E.2d 735, 738 (Ill. App. Ct. 1973); *Martin*, 821 S.W.2d at 97; *State v. McLean*, 44 So.2d 698, 699 (La. 1950); *State v. Sinclair*, 337 A.2d 703, 708 (Md. 1975); *Parker v. State*, 484 So.2d 1033, 1035-36 (Miss. 1986); *Hoyt v. Hoffman*, 416 P.2d 232, 233 (Nev. 1966); *People v. Gasbara*, 95 A.D.2d 333, 334 (N.Y. 1983); *Kellogg v. State*, 551 P.2d 301, 303 (Okla. Crim. App. 1976), *overruled on other grounds by Broadway v. State*, 818 P.2d 1253, 1255 n.1 (Okla. Crim. App. 1991); *Newsom*, 684 S.W.2d at 649; *Norman v. State*, 338 S.W.2d 714, 715 (Tex. Crim. App. 1960); *Sylvestre v. Commonwealth*, 391 S.E.2d 336, 339 (Va. Ct. App. 1990); *State v. Stout*, 95 S.E.2d 639, 642 (W. Va. 1956)). These courts have reasoned, as did this court in *Newsom*, that, because the payment of an existing debt with a worthless check does not actually retire the debt, the maker of the worthless check has not gained anything of value.

We conclude upon our de novo review that the trial court correctly determined, based upon the stipulated facts, that, as a matter of law, the defendant's conduct could not support a prosecution under Code section 39-14-121. Although the State argues on appeal that a jury could have determined that the issuance of the check in this case induced the victim to continue to work for the defendant and that this inducement was in the manner of an extension of credit, the State did not make that argument in the trial court and did not allege any facts to support such a conclusion, even when given the opportunity to do so by the trial court.

Accordingly, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE